## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

JOHN COHEN,            )
                              )
           Plaintiff,     )
                              )
v.                       )    Docket No. 2:21-cv-00267-NT
                              )
CITY OF PORTLAND, et al.,   )
                              )
           Defendants.   )

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Before me is the Defendants' motion to dismiss the Plaintiff's Fourth Amended Complaint (the "**Complaint**"). Defs.' Mot. to Dismiss ("**MTD**") (ECF No. 28).[1] For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL BACKGROUND[2]

It was shortly after 1:00 p.m. on April 12, 2020, when the Portland Police Department received a 911 call about a male subject, Eric Cohen, who had just

---

[1]     I held a conference of counsel on April 27, 2022, during which I granted the Plaintiff's oral motion to amend his complaint for the purpose of referencing certain exhibits he wished for me to consider in evaluating the Defendants' motion to dismiss (ECF No. 38). At the conference, the parties agreed that I should treat the Defendants' motion to dismiss the Plaintiff's Third Amended Complaint ("**MTD**") (ECF No. 28) as a motion to dismiss the Plaintiff's Fourth Amended Complaint (the "**Complaint**") (ECF No. 39).

[2]     The facts below are drawn from the allegations in the Complaint, which I take as true for the purpose of deciding a motion to dismiss. *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). In addition, the Plaintiff asks me to consider three exhibits attached to his opposition to the Defendants' motion: the body camera footage of the incident at issue here (the "**Bodycam Video**"); the Portland Police Department's Standard Operating Procedure regarding "Mental Health Crisis Intervention and Protective Custody" (the "**Mental Health SOP**"); and the Police Department's Standard Operating Procedure regarding "Law Enforcement Role and Authority" (the "**Role and Authority SOP**"). *See* Pl.'s Obj. to MTD Exs. 1–3 (ECF Nos. 30-1, 30-2, and 30-3). "Ordinarily, [on a motion to dismiss,] a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The First Circuit recognizes "narrow exceptions" to this rule "for documents the authenticity of which are

assaulted his girlfriend, was pacing around naked, and appeared to be in the midst of a mental health crisis. Fourth Am. Compl. ("**Compl.**") ¶ 11 (ECF No. 26). The 911 caller reported that Cohen had fled toward Interstate 295, in the direction of the Back Cove. Compl. ¶ 11. When the police arrived, at approximately 1:23 p.m., they chased Cohen into the frigid, shallow waters of the Back Cove. Compl. ¶¶ 13, 52.[3] The air temperature at that time was around forty-three degrees and the water temperature was around forty-one degrees. Compl. ¶ 14.

At 1:23 p.m., Defendant Christopher Gervais of the Portland Police requested a boat, the Marine 3, from the Portland Fire Department for a water rescue. Compl. ¶¶ 16–17. Gervais and two other officers then drove from the Back Cove to the Maine State Pier where the Marine 3 was docked; this took approximately eleven minutes. Compl. ¶¶ 16–18.

At 1:33 p.m. Defendant Michael Rand of the Portland Police arrived at the Back Cove and spoke with Officer Blake Cunningham, a former U.S. Coast Guard

---

not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). The Defendants do not dispute the authenticity of any of the exhibits, which are specifically referred to in the Complaint and central to the Complaint. *See* Compl. ¶¶ 49–50. I note that the Mental Health SOP and the Role and Authority SOP are also official documents posted to a government website. *See Kader v. Sarepta Therapeutics, Inc.*, Civil Action No. 1:14-cv-14318-ADB, 2016 WL 1337256, at *11 (D. Mass. Apr. 5, 2016). I conclude that the exhibits are appropriate to consider.

[3]    The circumstances surrounding Cohen's decision to enter the water are not entirely clear. While the Complaint asserts that the Portland Police Department "chas[ed] . . . Cohen into the . . . water[ ]," Compl. ¶ 52, at another point the Complaint merely asserts, "Eventually, officers arrived and traveled to the Back [Cove], where at approximately 1:23 p.m., Mr. Cohen had entered the . . . water[ ]. Compl. ¶ 13. In the Bodycam Video, Officer Cunningham, who was present at the beginning of the incident, answers in the affirmative when asked whether the police officers had been "chasing [Cohen] or something." At this stage, taking the alleged facts as true and making all reasonable inferences in the Plaintiff's favor, I credit the Plaintiff's assertion that the police chased Cohen into the water.

swimmer, who was standing on the shore. Compl. ¶¶ 19, 20, 33. Cunningham told Rand: "The problem is, this guy has about fifteen minutes to live. If he begins to struggle, I will strip . . . , [and] go in and cover him." Compl. ¶ 20. Rand responded: "We should have the fire boat right off, but I understand what you gotta do." Compl. ¶ 20.

By 1:39 p.m., approximately nine police officers and fire-rescue personnel, along with a K-9 unit, lined the shore. Compl. ¶¶ 22–24. One officer stood with a less-than-lethal weapon drawn. Compl. ¶ 25. Rand stated to his fellow officers, "[Cohen] has done a good job of staying afloat in this temperature for so long." Compl. ¶ 22. At that point, Cohen was thirty feet offshore and in waist-deep water. Compl. ¶ 22. Rand turned to Cunningham and said, "I don't want you going out there [and] fighting with him." Cunningham responded, "I have watched a lot of people drown and it's not long now." Compl. ¶ 27. "Oh, I know," replied Rand. Compl. ¶ 27. After a pause, Rand continued, "If they have a life jacket or anything of that sort you can put on, I'd be okay with it, but I don't want you going out there without it." As other first responders arrive on the scene, Rand began to ask around whether anyone had a life jacket available. Defendant Ronald Giroux of the Portland Fire Department yelled from the shore, "I will kick his ass if he comes out of the water." Compl. ¶¶ 8, 26. Thus far into the incident, no personnel on the shore made any attempt to rescue Cohen. Compl. ¶ 28.

At 1:42 p.m., Cunningham reported that Cohen had gone under the water. Compl. ¶ 29. Cunningham remarked: "He is dead," to which Rand responded, "Yup."

3

Compl. ¶ 30. At 1:45 p.m., Cunningham again offered to go rescue Cohen, stating: "If you give me a life jacket, I'll go save this guy's life." Compl. ¶ 33. Rand agreed to allow Cunningham to enter the water. Compl. ¶ 33. But, just as Cunningham began removing his tactical vest, the Marine 3 reported that it was about 100 feet from Cohen. Compl. ¶¶ 33–34. Rand told Cunningham not to enter the water because Marine 3 was nearing the body. Compl. ¶ 35.

At 1:46 p.m., twenty-three minutes after Cohen entered the water, Rand asked whether an ambulance was en route. Compl. ¶ 36. None had yet been assigned, and so an ambulance was summoned. Compl. ¶ 37.

At 1:47 p.m., Gervais, who was on board the Marine 3, reported that the boat had retrieved Cohen's body. Compl. ¶ 38. Gervais was unable to find a pulse on Cohen, though Rand stated that he saw "shallow breathing." Compl. ¶ 39. At 1:49 p.m., Cohen was brought to shore. Compl. ¶ 40. He lay naked for almost two minutes until a firefighter removed his jacket and put it around Cohen's shoulders. Compl. ¶¶ 40, 41, 43. Life-saving measures were not commenced until four minutes after he was removed from the water. Compl. ¶ 45.

At 1:53 p.m., the ambulance arrived and emergency personnel administered CPR and other resuscitating measures. Compl. ¶ 45. The ambulance left the Back Cove at 2:26 p.m., and, at 2:52 p.m., Cohen was pronounced dead at Maine Medical Center. Compl. ¶¶ 46–47. The Medical Examiner ruled that the causes of Cohen's death were drowning and hypothermia. Compl. ¶ 48.

The Portland Police Department's Standard Operating Procedure regarding "Mental Health Crisis Intervention and Protective Custody" (the "**Mental Health SOP**") emphasizes that when interacting with a person suspected to be experiencing a mental health crisis, officers should utilize a crisis intervention team and attempt de-escalation techniques. Pl.'s Obj. to MTD Ex. 2, at 2 (ECF No. 30-2). In addition, the Mental Health SOP states that all sworn officers must complete a forty-hour crisis intervention training/certification program. Pl.'s Obj. to MTD Ex. 2, at 4. The Police Department's Standard Operating Procedure regarding "Law Enforcement Role and Authority" (the "**Role and Authority SOP**") states that, "[w]hile on duty, officers shall at all times take appropriate action to . . . protect life . . . [and] provide emergency first aid to the injured." Pl.'s Obj. to MTD Ex. 3, at 4 (ECF No. 30-3).

Following Eric Cohen's death, his father, John Cohen, brought suit as a personal representative of his deceased son's estate against the City of Portland and Gervais, Rand, and Giroux, alleging numerous violations of state and federal law. The Defendants now move to dismiss the Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

The Defendants' motion to dismiss invokes Federal Rule of Civil Procedure ("**Fed. R. Civ. P.**") 12(b)(6). "[I]n adjudicating motions to dismiss under Rule 12(b)(6), the district court must apply the notice pleading requirements of [Fed. R. Civ. P.] 8(a)(2)." *Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005). Under Rule 8(a)(2), the complaint need only include "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "This statement must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Rivera*, 402 F.3d at 33 (internal quotation marks omitted).

When evaluating a motion to dismiss, I take "as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). "[A] complaint will survive a motion to dismiss when it alleges 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" if the facts alleged give rise to a reasonable inference of liability. *Id.* "Plausible" means "more than merely possible." *Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)).

Importantly, "[i]n substantive due process cases, the Supreme Court has held that such claims must be carefully scrutinized to determine if the alleged facts support the conclusion that the state has violated an individual's constitutional rights." *Rivera*, 402 F.3d at 33. This scrutiny entails two steps. First, I must assess "whether the facts alleged state a claim for violation of constitutional rights." *Id.* Then, "[i]f such a claim is stated, there is a second inquiry as to whether the allegations meet the separate set of requirements as to particular categories of defendants to establish a claim within 42 U.S.C. § 1983." *Id.*

**DISCUSSION**

## I.   Substantive Due Process and the State-Created Danger Doctrine

The Plaintiff alleges that the City of Portland, Gervais, Rand, and Giroux deprived Cohen of his life in violation of the state and federal constitutions.[4] Compl. ¶¶ 52, 57, 79, 101. In Counts I, II, VI and X, the Complaint alleges that the Defendants violated the Fourteenth Amendment, which states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In Counts IV, VIII, and XII, the Plaintiff alleges violations of state and federal constitutional rights under the Maine Civil Rights Act (the "**MCRA**"), 5 M.R.S.A. § 4682.[5] "The MCRA . . . is 'patterned' after Section 1983. As such, disposition of a claim under Section 1983 controls a claim brought under [the] MCRA." *Jackson v. Town of Waldoboro*, 751 F. Supp. 2d 263, 275 (D. Me. 2010) (internal citation omitted); *accord Abdisamad v. City of Lewiston*, 960 F.3d 56, 61 n.2 (1st Cir. 2020).

The Due Process Clause has both procedural and substantive components.

In its procedural aspect, due process ensures that government, when dealing with private persons, will use fair procedures. In its substantive

---

[4]     The mechanism for redressing violations of the U.S. Constitution is found in 42 U.S.C. § 1983. *See Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013). Section 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. The Complaint does not mention Section 1983 in Counts I, II, VI, or X, which it styles "Due Process" claims, but it styles Counts III, VII, and XI, which are based on alleged violations of the Eighth Amendment, as "Section 1983" claims. I will assume that all claims asserting violations of the federal Constitution are brought under Section 1983.

[5]     Title 5 M.R.S. § 4682, like 42 U.S.C. § 1983, "provides a general remedy for violations of federal and state constitutional and statutory rights." *Jackson v. Town of Waldoboro*, 751 F. Supp. 2d 263, 275 (D. Me. 2010).

> aspect, due process safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them.

*DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005) (internal citation omitted). Generally, "a State's failure to protect an individual against private violence . . . does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989); *see also Souza v. Pina*, 53 F.3d 423, 427 (1st Cir. 1995) ("[T]he Due Process Clause does not require the state to protect citizens from 'private violence' in whatever form, including suicide."). There is, however, an exception to this general rule. A substantive due process violation may occur where officers "fail[ ] to protect plaintiffs from danger created or enhanced by [the officers'] affirmative acts." *Irish v. Fowler*, 979 F.3d 65, 67 (1st Cir. 2020), *cert. denied*, 142 S. Ct. 74 (2021). To make out a cognizable state-created danger claim, the plaintiff must allege:

> "(1) that a state actor or state actors affirmatively acted to create or enhance a danger to the plaintiff;
>
> (2) that the act or acts created or enhanced a danger specific to the plaintiff and distinct from the danger to the general public;
>
> (3) that the act or acts caused the plaintiff's harm; and
>
> (4) that the state actor's conduct, when viewed in total, shocks the conscience."

*Id.* at 75*; see also Abdisamad*, 960 F.3d at 59–60 (explaining that a cognizable substantive due process claim must allege facts that are so extreme and egregious that they shock the contemporary conscience).

8

I interpret the Complaint to be asserting substantive due process, state-created danger claims in Counts I, II, VI, and X under § 1983 and under the MCRA in Counts IV, VIII, and XII. These Counts are premised on the Plaintiff's contention that the Defendants "created a significant danger to Mr. Cohen." Compl. ¶¶ 52, 57, 79, 101. The Defendants contend that Count I, asserted against the City, fails because it does not adequately allege a basis for municipal liability, and that Counts II, VI, and X (and the related MCRA claims), asserted against the individual Defendants, fail to state plausible state-created danger claims. MTD 5–14. The Defendants further argue that even if the Complaint does allege viable state-created danger claims, the individual Defendants are each entitled to qualified immunity. MTD 14–17. I address the Defendants' arguments in turn.

## A.    The Due Process Claim against the City of Portland (Count I)

The Defendants challenge Count I on the ground that it does not adequately allege a basis for municipal liability. Local governments are "persons" who can be held liable for civil rights violations pursuant to § 1983. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). "But 'liability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury.'" *Abdisamad*, 960 F.3d at 60 (quoting *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)). "Municipal liability 'cannot be based on respondeat superior but requires independent liability based on an unconstitutional policy or custom of the municipality itself.'" *Id.* (quoting *Dirrane v. Brookline Police Dep't*, 315 F.3d 65, 71 (1st Cir. 2002)).

While there are several ways a municipality can be held liable, the Plaintiff's opposition to the motion to dismiss clarifies that the Plaintiff is pursuing a theory that the City of Portland failed to train its officers. Pl.'s Obj. to Defs.' MTD 5–6. "A city's policy of inadequately training its police force can serve as a basis for § 1983 liability if the city's failure to train 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.' " *Whitfield v. Meléndez-Rivera*, 431 F.3d 1, 9–10 (1st Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "[T]o state a claim for municipal liability, a plaintiff must plead more than mere insufficiency of a municipality's training program." *Marrero-Rodríguez v. Mun. of San Juan*, 677 F.3d 497, 503 (1st Cir. 2012). "[A] training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 27 (1st Cir. 2005). "[D]eliberate indifference will be found where the municipality fails to provide adequate training notwithstanding an obvious likelihood that inadequate training will result in the violation of constitutional rights." *Whitfield*, 431 F.3d at 10. "The plaintiff must also prove that 'the deficiency in training actually caused the police officers' indifference' to the public's constitutional rights." *Id.* (quoting *City of Canton*, 489 U.S. at 391).

Though the Complaint is scarce on details regarding the deficiencies of the City's training program, it alleges sufficient facts to support a plausible claim for municipal liability on a failure-to-train theory. The Complaint alleges that the

Portland Police Department was informed that Cohen was experiencing a mental health crisis and that officers chased him into the frigid waters of the Back Cove. Ultimately, nine officers and fire-rescue personnel and a police dog lined the shore and watched Cohen, about thirty feet offshore, flounder in the water. Compl. ¶¶ 22–24. The officers were aware that if Cohen remained in the water, he had a very limited time to live, yet they made no attempts to coax Cohen out of the waist-deep water or to rescue him using available equipment, such as a rope or ring. Compl. ¶ 28. Rather, compounding the tension, one officer stood at the shore with a K-9 unit; another officer stood with a weapon drawn; and Giroux yelled that he would "kick [Cohen's] ass if he c[ame] out of the water." Compl. ¶¶ 23, 25–26. Although Cohen was in the water for approximately twenty-four minutes, no ambulance was summoned until moments before Cohen was removed from the water. Compl. ¶¶ 37–38. Once Cohen was brought to shore, there was no equipment available to attend to him, not even a blanket to warm him up. Compl. ¶ 41. Cohen remained naked for several minutes, until a Portland Firefighter removed his jacket and placed it over Cohen's upper body. Compl. ¶ 43. Resuscitation efforts were not made until an ambulance arrived on the scene, four minutes after Cohen was brought to shore. Compl. ¶ 45.

Taken together, these facts suggest that numerous members of the Portland Police and Fire Departments were unprepared to deal with situations involving people experiencing mental health crises and/or those in need of water rescue, allowing me to draw an inference that the City failed to train its officers. Furthermore, the Complaint plausibly alleges facts that allow me to infer that the

deficiency in training caused the officers' indifference to Cohen's constitutional rights, ultimately leading to Cohen's death. Thus, the motion to dismiss Count I is denied.

**B.    The Due Process Claims (Counts II, VI, and X) and MCRA Claims (Counts IV, VIII, and XII) Based on Violations of Due Process against Gervais, Rand, and Giroux**

The Defendants contend that the Plaintiff fails to state a plausible substantive due process claim against any of the individual Defendants. Specifically, the Defendants contend that the state-created danger claims fail against the individual Defendants because the Plaintiff voluntarily assumed the risks posed by entering the frigid waters, and because the Complaint fails to allege affirmative acts by the individual Defendants, as required under the state-created danger doctrine. MTD 9.

I begin with the concept that Cohen voluntarily assumed the risk of drowning by entering the frigid waters of the Back Cove. Under the state-created danger doctrine, a "government official must actually have created or escalated the danger to the plaintiff and the plaintiff cannot have 'voluntarily assume[d] those risks.' " *Irish*, 979 F.3d at 74 (quoting *Vélez-Díaz v. Vega-Irizarry*, 421 F.3d 71, 81 (1st Cir. 2005)). The Defendants acknowledge that the Complaint alleges that the police chased Cohen into the water, but they argue that "this vague allegation cannot overcome the well-pled fact that Mr. Cohen entered Back Cove of his own accord." MTD 9. As discussed above, *see supra* note 3, both the Complaint and Cunningham's comment on the Bodycam Video support the allegation that the police were chasing Cohen when he entered the water. Moreover, the Plaintiff has alleged that Cohen appeared to be psychotic and/or suffering a mental health crisis. Neither party addresses whether an individual in a psychotic state could have acted "voluntarily,"

and this is an area that would benefit from further factual and legal development. At the motion to dismiss stage, I decline to state as a matter of law that, on the facts alleged, no viable state-created danger claim is presented based on Cohen's assumption of risks.

The Defendants next assert that the Complaint fails to plausibly allege that the state officials "created" the danger to Cohen and that the Plaintiff's state-created danger claim fails because "the focus of the [Complaint] is upon alleged *failures to act* by various personnel, rather than *affirmative acts* as required to support a viable state-created danger claim." MTD 9. While the Defendants are correct that mere "state inaction" is not cognizable as a substantive due process violation, *see Rivera*, 402 F.3d at 36 (internal quotation marks omitted), viewed in total and with all inferences drawn for the Plaintiff, the Complaint plausibly alleges a series of *affirmative actions* that created or enhanced the danger to Cohen sufficient to assert a state-created danger claim against the City. But in asserting a § 1983 claim against individual officers, a plaintiff must show that each officer's own actions, "could give rise to a state-created danger claim." *Welch v. City of Biddeford Police Dep't*, 12 F.4th 70, 75–76 (1st Cir. 2021) ("Officers are not liable under § 1983 for the actions of other officers."). Accordingly, I address the claims with respect to each individual Defendant separately.

### 1.   Christopher Gervais

I agree with the Defendants that the facts alleged in the Complaint do not support a state-created danger claim as to Gervais. According to the Complaint, right when Gervais arrived at the Back Cove he requested that the Fire Department

provide a rescue boat to assist Cohen. Compl. ¶¶ 13, 16. The Complaint alleges that it took eleven minutes for Gervais to drive from the Back Cove to the Marine 3 rescue boat, Compl. ¶ 17–18, but there are no facts indicating that the decision to meet the Marine 3 or the length of the drive could be characterized as "conscience shocking." And, although Gervais' efforts to rescue Cohen were ultimately unsuccessful, the Complaint does not allege facts indicating that Gervais took any affirmative acts that created or enhanced the danger to Cohen.[6] Even if Gervais took too long to travel to the rescue boat or negligently failed to provide first aid to Cohen once Cohen was aboard, "mere negligence would be insufficient to maintain a claim of substantive due process violation." *Abdisamad*, 960 F.3d at 60 (internal quotation marks omitted). Thus, the motion to dismiss Count II is granted. Because I have dismissed the constitutional claim against Gervais under § 1983, and because disposition of a § 1983 claim controls a claim brought under the MCRA, the motion to dismiss the MCRA count against Gervais (Count IV) is also granted.

### 2. Michael Rand

Though it is a closer question, I also find that the Plaintiff has not alleged enough facts to establish a state-created danger substantive due process violation against Rand. Specifically, the Complaint does not allege any affirmative acts on the part of Rand that created or enhanced the danger to Cohen. The Complaint alleges that Rand arrived at the Back Cove about ten minutes after Cohen entered the water

---

[6]      Notably, the Plaintiff does not respond to the Defendants' argument that Gervais cannot be held individually liable pursuant to § 1983.

and that he did not attempt to personally rescue Cohen or coax him out of the water. While these are troubling details that raise questions about the Police Department's training on these matters, they do not rise to the level of affirmative acts. "Because the line between an affirmative act and an omission may be difficult to draw, in determining the affirmative act question, courts in other jurisdictions have analyzed whether a government official's alleged specific act placed the individual 'in a position of relatively less safety than [he or she] enjoyed before the affirmative act.' " *Hayes v. Town of Dalton*, Case No. 3:21-cv-30055-KAR, 2022 WL 488466, at *6 (D. Mass. Feb. 17, 2022) (quoting *Doe v. Round Valley Unified Sch. Dist.*, 873 F. Supp. 2d 1124, 1132 (D. Ariz. 2012)). Although the acts of the officers as a group arguably enhanced the danger to Cohen, placing him in a position of relatively less safety, the Complaint does not plausibly allege that Rand's acts alone increased the danger to Cohen.

In addition, Rand's discussions with Cunningham cannot support a state-created danger claim. The Plaintiff asserts that Rand "prohibited Officer Cunningham from rescuing Mr. Cohen multiple times." Pl.'s Obj. to MTD 7–8. The video, however, tells a different story. Cunningham offered to go in and rescue Cohen three times. The first time, Rand did not forbid Cunningham from entering the water, but rather told him "I understand what you gotta do." Compl. ¶ 20. The video shows that, a few minutes later, Cunningham offered to go in again and Rand agreed that Cunningham could go in if he had a life jacket. Rand then called out to the other officers present asking if anybody had a life jacket. The third time Cunningham offered to go in, Rand affirmatively authorized him to enter the water. Compl. ¶ 33.

15

But, just as Cunningham began to remove his tactical vest, Marine 3 reported that it was close by. Compl. ¶¶ 33–34. Rand then told Cunningham not to enter the water, "since Marine Rescue 3 was nearing Mr. Cohen's body." Compl. ¶ 35. The video provides support for the decision to have Cunningham stay on the shore as the boat can be seen approaching Cohen just as Cunningham steps into the water. There is no evidence that this single instance in which Rand prohibited Cunningham from entering the water enhanced the danger to Cohen, as Marine 3 reported that it had retrieved Mr. Cohen's body just two minutes later. *See* Compl. ¶ 38 (stating that Marine 3 reported that it had Mr. Cohen's body on board at 1:47 p.m.). Because the Complaint does not allege that Rand undertook any affirmative acts that created or enhanced the danger to Cohen, the motion to dismiss Count VI is granted.[7] Because I have dismissed the constitutional claim against Rand under § 1983, and because disposition of a § 1983 claim controls a claim brought under the MCRA, the motion to dismiss the MCRA count against Rand (Count VIII) is also granted.

### 3.   Ronald Giroux

The facts alleged in the Complaint are minimally sufficient to support the due process claim against Giroux. According to the Complaint, Giroux shouted from the shore, "I will kick his ass if he comes out of the water." Compl. ¶ 26. The Defendants levy two attacks on the due process claim against Giroux, but I do not find either convincing. First, the Defendants argue that "[t]here is no allegation that Mr. Cohen

---

[7]      The Complaint does not allege that Rand was in command of the scene, although that inference can be drawn from the video. But the Plaintiff makes no argument that Rand's status as a commander should change the analysis in any way.

even heard [Giroux's] comment." MTD 10. While the Complaint does not specifically allege that Mr. Cohen heard this comment, at the motion to dismiss stage, I must make all reasonable inferences in the Plaintiff's favor. Here, I can infer that Cohen heard Giroux's comment.

Second, the Defendants assert that "Mr. Giroux cannot be held liable for simply being present." MTD 10. But the Plaintiff is not seeking to hold Giroux liable for simply being present; rather, he has alleged facts demonstrating that Giroux's affirmative act, yelling a threat, enhanced the danger to Cohen. Moreover, this affirmative act is at least arguably conscience-shocking, particularly since it was made when Cohen was about to drown. Although "[f]ear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest," this "does not mean that under no circumstances will verbal threats or harassment rise to the level of a constitutional violation." *Pittsley v. Warish*, 927 F.2d 3, 7 & n.3 (1st Cir. 1991), *abrogated on other grounds by Martinez v. Cui*, 608 F.3d 54 (1st Cir. 2010). Conduct that is "intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Thus, while this is a close call given the limited involvement of Giroux, the Plaintiff has plausibly alleged a state-created danger claim as to Giroux.

The Defendants assert that if the Plaintiff has established a viable state-created danger claim as to any of the individual Defendants, qualified immunity

should apply. MTD 14–15. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callaha*n, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome a qualified immunity defense, a plaintiff suing government officials must "show (1) that [the officer violated] federal rights and (2) that these rights were so clearly established that a reasonable officer should have known how they applied to the situation at hand." *Justiniano v. Walker*, 986 F.3d 11, 26 (1st Cir. 2021) (quoting *Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 23 (1st Cir. 2016)). Because I find that the Complaint plausibly alleges Giroux violated Cohen's substantive due process rights through affirmative acts that shock the conscience, I go on to consider whether a reasonable officer in Giroux's position would have known his conduct violated clearly established law.

"A rule is clearly established either when it is 'dictated by controlling authority or a robust consensus of cases of persuasive authority.'" *Irish*, 979 F.3d at 76 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018)). "[A]lthough there need not be a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." *Eves v. LePage*, 927 F.3d 575, 583 (1st Cir. 2019) (en banc) (internal quotation marks omitted). "The salient question . . . is whether the state of the law at the time of the defendants' conduct gave them fair warning that their alleged treatment of the plaintiffs was unconstitutional." *Irish*, 979 F.3d at 76 (alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741

(2002)). In addition, "[a] defendant's adherence to proper police procedure bears on all prongs of the qualified immunity analysis." *Id.* at 77. "A lack of compliance with state law or procedure does not, in and of itself, establish a constitutional violation, but when an officer disregards police procedure, it bolsters the plaintiff's argument both that an officer's conduct 'shocks the conscience' and that 'a reasonable officer in the officer's circumstances would have believed that his conduct violated the Constitution.' " *Id.* (quoting *Stamps v. Town of Framingham*, 813 F.3d 27, 32 n.4 (1st Cir. 2016)).

In *Irish v. Fowler*, the First Circuit held that the state-created danger doctrine was clearly established as of 2015. *Id.* at 77–78. The Defendants acknowledge *Irish*'s holding, but they argue that it does not preclude qualified immunity here. MTD 15. First, the Defendants argue that "[t]his case does not involve any affirmative actions by the Individual Defendants that created or enhanced a danger to Mr. Cohen." MTD 15. Second, the Defendants assert that "a greater degree of particularity is required when evaluating whether a right is clearly established" and that the factual circumstances of Cohen's death distinguish it from *Irish* and other "clearly established" law. MTD 15 (internal quotation marks omitted). As for the first argument, I disagree with the Defendants that this case does not involve affirmative actions by Giroux that created or enhanced a danger to Cohen. The Complaint adequately alleges that Giroux committed at least one affirmative act that created or enhanced the danger to Cohen.

19

I am also not convinced by the Defendants' second argument regarding the degree of particularity required in defining the right in question. As the First Circuit has explained, "judges must 'not . . . define clearly established law at a high level of generality' . . . . Rather, a 'more particularized' inquiry is required." *Belsito Commc'ns*, 845 F.3d at 23 (first alteration in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Here, the Defendants define the right at issue in *Irish* as "implicat[ing] police decisions that created a risk to a witness in criminal case," whereas they define the right at issue in this case as "involv[ing] police decisions as to how to carry out a rescue of a civilian who has waded into frigid waters after assaulting another person . . . without endangering the lives of rescue personnel." MTD 15.

As the First Circuit has warned, however:

> [J]ust as a court can generalize too much, it can generalize too little. If it defeats the qualified-immunity analysis to define the right too broadly (as the right to be free of excessive force), it defeats the purpose of § 1983 to define the right too narrowly (as the right to be free of needless assaults by left-handed police officers during Tuesday siestas).

*Belsito Commc'ns*, 845 F.3d at 23 n. 9 (quoting *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508–09 (6th Cir. 2012)). To define the right at issue here so narrowly would arguably tread dangerously close to undermining the purpose of § 1983. Moreover, *Irish* itself does not support as limited a definition as the Defendants suggest. In *Irish*, the court emphasized that what was clearly established was the state-created danger theory itself, the doctrine holding "that a state official may incur a duty to protect a plaintiff where the official creates or exacerbates a danger to the plaintiff." *Irish*, 979 F.3d at 77. And, as the *Irish* court clarified, even absent factually similar cases, "a general proposition of law may clearly establish the

violative nature of a defendant's actions, especially when the violation is egregious." *Id.* at 78. I am satisfied at this early stage in the litigation that *Irish*'s general proposition of law clearly establishes the violative nature of Giroux's actions.

Finally, the fact that officers violated state law or official procedure can lend support to a finding that a reasonable officer would have known the conduct violated constitutional rights. *See id.* at 77 ("A lack of compliance with state law or procedure does not, in and of itself, establish a constitutional violation, but when an officer disregards police procedure, it bolsters the plaintiff's argument . . . that 'a reasonable officer in [the officer's] circumstances would have believed that his conduct violated the Constitution.' " (second alteration in original) (quoting *Stamps*, 813 F.3d at 32 n.4)). Although I do not know at this stage the policies and procedures of the Fire Department (Giroux's employer), I am hopeful that more discovery can shed light on this issue.

The motion to dismiss Count X is denied. Because I find that the Plaintiff has adequately alleged a due process violation against Giroux, the Motion to Dismiss the MCRA claim (Count XII) is also denied.

## II.    Eighth Amendment (Counts III, VII, and XI)

The Plaintiff alleges that the individual Defendants (Gervais, Rand, and Giroux) violated the Eighth Amendment of the U.S. Constitution. The Eighth Amendment, which applies to the states through the Fourteenth Amendment, *Zingg v. Groblewski*, 907 F.3d 630, 634–35 (1st Cir. 2018), prohibits "cruel and unusual punishments," U.S. Const. amend. VIII. However, "[t]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has

secured a formal adjudication of guilt in accordance with due process of law." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n.40 (1977)); *accord Martínez-Rivera v. Sánchez Ramos*, 498 F.3d 3, 9 (1st Cir. 2007); *Marrero-Rodríguez*, 677 F.3d at 501. Because the Complaint does not allege that the state had secured a formal adjudication of guilt, or that Cohen was otherwise incarcerated or in custody, when the events in question unfolded, the Complaint fails to state a claim for violation of the Eighth Amendment.[8] The motion to dismiss Counts III, VII, and XI is granted.

## III.    Wrongful Death (Counts V, IX, and XIII)

The Defendants assert that the Plaintiff's wrongful death claims against Gervais, Rand, and Giroux should be dismissed because these Defendants are entitled to discretionary function immunity. MTD 18–19. A claim for wrongful death under Maine law is governed by 18-C M.R.S. § 2-807, which provides a cause of action "[w]henever the death of a person is caused by a wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof." 18-C M.R.S. § 2-807(1). Tort claims brought under the wrongful death statute are subject to the Maine Tort Claims Act (the "**MTCA**"), 14 M.R.S. § 8101 *et seq*. 18-C M.R.S. § 2-807(4); *Jackson*, 751 F. Supp. 2d at 276. The MTCA confers absolute immunity on government employees for "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused." 14 M.R.S. § 8111(1)(C).

---

[8]    For the same reasons, any MCRA claims based on the Eighth Amendment also fail.

A four-part test is used to determine whether discretionary function immunity applies:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program[,] or objective?

> (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?

> (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

> (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Lawson v. Willis*, 2019 ME 36, ¶ 9, 204 A.3d 133 (per curiam) (alteration in original) (quoting *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 426 (Me. 1987)).

Here, Gervais and Rand are entitled to discretionary function immunity. "Actions taken by a law enforcement officer in response to an emergency implicate the discretionary judgment of the officer and the immunity protecting governmental entities and their employees extends to those actions." *Norton v. Hall*, 2003 ME 118, ¶ 9, 834 A.2d 928. Immunity extends to both the decisions "*whether* to respond" and "*how* to respond" to an emergency. *Id.* Moreover, the Plaintiff does not allege that the Police Department lacked the requisite authority to make the challenged decisions.

The Plaintiff argues that the Defendants are not entitled to discretionary function immunity because the Mental Health SOP and Role and Authority SOP *required* the officers to respond in a specific way to the emergency, thus removing any discretion on their parts. Pl.'s Obj. to MTD 10. But the Maine Law Court has held

that conduct "does not lose its discretionary character merely because there are policy guidelines delineating how the discretion should be exercised." *Selby v. Cumberland Cnty.*, 2002 ME 80, ¶ 10, 796 A.2d 678; *accord Doucette v. City of Lewiston*, 1997 ME 157, ¶ 6, 697 A.2d 1292. Thus, Gervais and Rand are entitled to discretionary function immunity. The motion to dismiss Counts V and IX is granted.

I am not convinced, however, that Giroux is entitled to discretionary function immunity. The MTCA's immunity provision applies to discretionary acts committed by government employees "within the scope of their employment." *Darling*, 535 A.2d at 424. "Immunity exists even when the official lacked the authority to do the act, or abused the discretion," but "[a] governmental official will not be shielded from liability . . . for actions that so clearly exceed the scope of the official's authority that the official cannot be said to be acting in an official capacity." *Selby*, 2002 ME 80, ¶ 6 & n.5, 796 A.2d 678 (emphasis deleted); *see also Polley v. Atwell*, 581 A.2d 410, 414 (Me. 1990) (explaining that discretionary function immunity does not apply where "the defendant's egregious conduct clearly exceeded, as a matter of law, the scope of any discretion he could have possessed in his official capacity as a police officer" (emphasis deleted)). Here, the Defendants have not explained how Giroux's conduct— i.e., his decision to yell "I will kick his ass if he comes out of the water"—falls within the scope of his employment or within the scope of the discretion he possessed as a firefighter. Because it is not clear to me whether Giroux can be said to have been acting in an official capacity when he made this statement, *see Selby*, 2002 ME 80,

24

¶ 6 n.5, I decline to find at this stage that Giroux is entitled to immunity. Thus, the motion to dismiss Count XIII is denied.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion to dismiss (ECF No. 28). The motion is **GRANTED** as to Counts II, III, IV, V, VI, VII, VIII, IX, and XI. The motion is **DENIED** as to Counts I, X, XII, and XIII.


SO ORDERED.

/s/ Nancy Torresen            
United States District Judge

Dated this 4th day of May, 2022.